```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/14/2020
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------X
UNITED STATES OF AMERICA          :
                                  :
     -against-                    :     No. 01 Cr. 307 (JFK)
                                  :
OCTAVIO FRIAS,                    :     **OPINION & ORDER**
                                  :
                    Defendant.    :
--------------------------------------X

APPEARANCES

FOR DEFENDANT OCTAVIO FRIAS:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Adam S. Hobson
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a pro se motion by Defendant Octavio Frias seeking a sentence reduction and his immediate release due to Frias's age (he is 66), preexisting medical conditions, and the COVID-19 pandemic. Frias brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute. The Government opposes Frias's motion as substantively meritless because Frias's medical conditions, the circumstances of his incarceration, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to his term of imprisonment. For the reasons set forth below, Frias's motion is DENIED.

1

**I.  Background**

Unless otherwise noted, the following is taken from the materials the parties submitted, Frias's July 13, 2004 Amended Presentence Investigation Report, the transcript of Frias's January 4, 2006 resentencing, and the Court's 2010 decision denying Frias's request for habeas relief pursuant to 28 U.S.C. § 2255.  See Frias v. United States, No. 01 Cr. 307 (JFK), 2010 WL 3564866 (S.D.N.Y. Sept. 13, 2010).  In ruling on Frias's compassionate release request, the Court has considered the arguments advanced in Frias's pro se motion (ECF No. 143), the Government's opposition, (ECF No. 145), and Frias's reply, (ECF No. 146).

On March 12, 2003, Frias was convicted by a jury of violating 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 by committing murder while engaged in a conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin and more than five kilograms of cocaine.[1]

The charges stemmed from Frias's participation in the premeditated contract-killing of Mario Lobo, the co-owner of a Manhattan restaurant and club which operated as a large-scale narcotics and gambling operation.  Frias was the night manager

---

[1] Frias's jury trial commenced before the Honorable Allen G. Schwartz on March 4, 2003, however, Judge Schwartz passed away shortly after the trial.  The case was reassigned to this Court for sentencing and all subsequent matters.

of the restaurant, which also doubled as a nightclub, and he maintained a close relationship with the restaurant's other owner, Roberto Martinez-Martinez.  Frias assisted Martinez-Martinez and Lobo in their illegal gambling operation and the distribution of multi-kilogram quantities of heroin and cocaine.  Over time, however, the profitability of Lobo and Martinez-Martinez's illegal business was threatened by Lobo's gambling losses, and Martinez-Martinez decided to have Lobo killed.

Martinez-Martinez delegated the planning of Lobo's murder to Frias who, in the 1980s, had worked with a man named Miguel Feliz while the two were police officers together in the Dominican Republic.  Frias coordinated the hiring of a crew of contract killers led by Feliz, and on September 21, 1991, Frias directed the hitmen to the restaurant where Lobo was eating dinner at the time.  Frias met Feliz and a second gunman outside the restaurant, where Frias explained that he would identify their target inside.  The three men entered the restaurant.  Frias walked up to Lobo and hugged him.  After Frias walked away from Lobo, one of the hitmen approached Lobo from behind and shot him in the back of the head.  Lobo died instantly.  Approximately ten years later, Frias was arrested.  The jury returned its guilty verdict on the single count indictment in this case after approximately one and a half hours of deliberation.

On July 1, 2004, the Court sentenced Frias to life imprisonment. By Summary Order dated September 28, 2005, the Court of Appeals for the Second Circuit affirmed the judgment of conviction against Frias, but remanded the case for the limited purpose of resentencing in light of United States v. Booker, 543 U.S. 220 (2005). Following a hearing on January 4, 2006, the Court again sentenced Frias to life imprisonment, which the Second Circuit affirmed on March 31, 2008. To date, Frias has served approximately 19 years of his life sentence.

On August 11, 2020, Frias, proceeding pro se, filed a motion requesting a reduction in sentence and his immediate compassionate release due to the COVID-19 pandemic. (ECF No. 143.) Frias's motion explained that he suffered from a variety of medical conditions, including certain lung and heart conditions as well as diabetes, and he was deeply worried about his health should he contract the virus. On August 17, 2020, the Court ordered the Government to respond, and on August 27, 2020, the Government opposed Frias's request on the grounds that no compelling and extraordinary reasons support his release which, in any event, would be inappropriate under the sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 145.) Frias submitted a reply brief on September 29, 2020. (ECF No. 146.)

**II.  Discussion**

    **A.  Legal Standard**

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A).  Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

The Second Circuit recently ruled that the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing

5

Guidelines, "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, --- F.3d ---, No. 19-3218-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). Accordingly,

> when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020) (footnote and internal citations omitted). "[P]ro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

### B.  Analysis

The Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention,

6

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited October 13, 2020); see also United States v. Park, --- F. Supp. 3d ---, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).  And, on at least one occasion, it has ruled that the threat posed by the COVID-19 pandemic to a medically "high-risk" individual constitutes "extraordinary and compelling reasons" to warrant immediate compassionate release. See United States v. Smith, 454 F. Supp. 3d 310, 315 (S.D.N.Y. 2020) (granting release to non-violent 62-year-old with multiple physical ailments); but see United States v. Seshan, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying release to 47-year-old despite his "end-stage renal failure and hypertension" and the threat of COVID-19 because, inter alia, defendant had a history of violence and granting the motion would disserve important 3553(a) sentencing factors).

Nevertheless, in this case, even if Frias could demonstrate that his age, health risks, and the COVID-19 pandemic provide extraordinary and compelling reasons for a sentence reduction, application of the 3553(a) factors cripples his request and

outweighs any justification for early-release.  Here, the factors that weigh in Frias's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  Indeed, Frias's offense conduct is among the most serious and reprehensible the Court has ever encountered: Frias deliberately and brutally organized and helped murder Lobo.  For the reasons stated in detail at Frias's resentencing, which are incorporated by reference here, the Court finds that modifying Frias's term of imprisonment would disserve the above important sentencing factors.  Accordingly, Frias's motion is denied. Cf. Seshan, 2020 WL 2215458, at *5; United States v. Montevecchi, 18 Cr. 15 (AKH), 2020 WL 3051335, at *2 (S.D.N.Y. June 8, 2020) (denying release to 74-year-old defendant with heart disease and other conditions); United States v. Lika, No. 84 Cr. 499 (CS), 2020 WL 2766049, at *3 (S.D.N.Y. May 28, 2020) (same for 70-year-old serving a life sentence who had cancer and other conditions).

### III. Conclusion

For the reasons set forth above, Defendant Octavio Frias's motion for a reduction in sentence is DENIED.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 143.

**SO ORDERED.**

Dated: New York, New York
October 14, 2020

_____
John F. Keenan
United States District Judge